# ALTA R. CASKEY, Respondent, v. CITY OF LA BELLE, Appellant.

## St. Louis Court of Appeals, April 14, 1903.

1. **Municipal Corporation: PERSONAL INJURY: DAMAGES: EVIDENCE, RULED NOT PREJUDICIAL.** Plaintiff, eight years old, testified that she fell by stepping in a crack between two boards in a city walk. A witness testified that she heard another girl say, before plaintiff, a few minutes after the accident, that plaintiff had weak ankles, which gave way, causing her to fall, and that plaintiff, who was crying, stood by and said nothing. This was stricken out on plaintiff's motion. Another witness testified to the same facts without objection or contradiction. *Held,* that in view of such facts and of the physical and mental anguish of plaintiff, whose arm was broken by the fall, and of the further fact that the witness did not see plaintiff fall, defendant was not materially prejudiced by the error in striking it out.

Caskey v. City of La Belle.

2. ———: ———: ABSENT WITNESSES: COURT STENOG-
RAPHER'S NOTES: EVIDENCE WHEN NOT REVIEWED.
Where a party does not state what the absent witnesses had testi-
fied to at a former trial of the case, or what it would prove from
the court stenographer's notes of their testimony, so that the appel-
late court can determine whether or not the evidence was com-
petent or material, *held*, that the action of the trial court in ex-
cluding such evidence, will not be reviewed.

.3. ———: SIDEWALK DEFECTIVE: WHERE DEFECT WAS:
PROOF WITH RESPECT THERETO. Where plaintiff proved
that a sidewalk was defective, by having a five-inch crack between
the two parallel boards composing it for its entire length; that the
city officers had actual knowledge of its condition; and that she
unwittingly stepped into the crack, and was thereby caused to fall,
and was injured, she made out a prima facie case, and should not
be held to strict proof of the exact point in the sidewalk where she
fell, nor of the exact number of inches her foot went into the crack,
as alleged in her petition.

4. ———: ———: CHILD NOT GUILTY OF CONTRIBUTORY
NEGLIGENCE. Since it is not negligence for a child of tender
years and immature discretion to play on the sidewalks of a city,
such child is not guilty of contributory negligence, if, while thought-
lessly playing upon a defective walk, it should step into a hole
therein and be injured.

Appeal from Lewis Circuit Court.—*Hon. Edwin R.
McKee,* Judge.

AFFIRMED.

STATEMENT.

Defendant, the city of La Belle, is a city of the
fourth class. The plaintiff was injured by a fall, al-
leged to have been caused by defects in a sidewalk on the
east side of Pomeroy street, opposite the mouth of Con-
gress street in said city.

The answer was a general denial and a plea of con-
tributory negligence.

Plaintiff received the injury on the morning of No-
vember 25, 1899, at which time she was eight years and
four months old, by falling on the plank sidewalk on the
east side of Pomeroy street, in said city, opposite the

mouth of Congress street where it intersects Pomeroy
street. The elbow joint of her right arm was fractured;
the fracture healed, but left the joint stiff so that the
arm has been of little use to her, and the medical testi-
mony is that the injury is incurable and permanent and
there is little hope of any material improvement.

Congress street, which is sixty-six feet wide, enters
into Pomeroy street on the west side. The evidence
tends to show that the city expected, at some time in the
future, to extend Congress street on over and east of
Pomeroy and, presumably, with this intention in view
laid, or caused to be laid on the east side of Pomeroy
street opposite the mouth of Congress street the full
width of the latter street, the sidewalk in question. The
walk was constructed by laying two boards, twelve
inches wide and two inches thick, lengthwise on blocks
laid upon the ground for their support. The parallel
boards were laid from four and one-half to five inches
apart. In this space weeds and grass had grown up,
but had been mowed off level with the surface of the
walk, in the summer of 1899 prior to the injury. There
were two drains or ditches near the south end of the
two-board walk where it joined a four-foot board side-
walk properly laid. One of these drains was an artifi-
cial ditch from eight to ten inches deep and located from
six to eight feet from the south end of the two-board
walk. The ground was about level where the walk was
laid, and it was nowhere elevated to exceed from four
to five inches above the surface of the ground, and in
some places it was very near or quite even with the
surface. This walk had been laid three or four years
prior to the injury and was in the same condition, in
November, 1899, as when laid, except the blocks of wood
on which it was supported had partially sunk into the
earth. Its condition was well known to the defendant's
street commissioner, he having mowed the grass and

weeds about it only a month or two before the injury, and must have been known to all the officers of the city as the evidence tends to prove that there was a great deal of traveling over this walk and that the street was a much-used thoroughfare.

The plaintiff lived with her parents in the northern part of the city, but had only been living in the city a few months. She was attending school at the time she received the injury. The school was south of where she lived and on Pomeroy street, and her route to the school was over this street. There were sidewalks on either side of the street. On the morning of her injury, with five or six other school girls, she was walking on the west side of the street towards the schoolhouse. When they arrived at Congress street she and some of the other girls went diagonally across Pomeroy street arriving on the two-plank sidewalk south of its center.

Plaintiff's testimony is that she was in the rear of the other girls, that when she arrived at the point where the twelve-inch drain ran under the walk, she stepped one foot into the opening between the boards and into the ditch, whereby she was caused to fall on the sidewalk on her face. Her arm was broken and she was otherwise bruised. The girls immediately in front of her heard her fall and went to her assistance and helped her up, took her on to the schoolhouse and from there she was escorted home and a physician called who dressed and treated the injury for several months, and until she with her family moved away.

Plaintiff testified that she was not running, not looking back behind her and was not talking to anyone behind her and that there was no one behind her; that there was no frost on the boards and that she had never noticed the drain or ditch under the walk, until after she was hurt.

On the part of defendant, the evidence tends to

prove that there was frost on the walk; that plaintiff was skipping along sideways looking back talking to some girls behind her and slipped and fell; that there were no drains or ditches under the walk where she fell.

Grace Morton was a cousin of plaintiff, and was one of the girls who helped her up and helped her to the schoolhouse and from there to her home. Dulcie Mulinex, a witness for the defendant, testified that she saw the accident and that after Grace Morton and the plaintiff arrived at the schoolhouse, she heard Grace Morton say that plaintiff had weak ankles; that her ankles gave way and that was what caused her to fall; that plaintiff was present and heard this statement but said nothing.

Lucile Dowell, another witness for defendant, testified to the same statement, that plaintiff said nothing; that she was crying.

"Q. Question by the Court: Alta did not say anything? A. She was crying."

Plaintiff's counsel then moved that the evidence of this statement be stricken out. The motion was sustained, to which defendant's counsel objected and excepted.

Mrs. Caskey, plaintiff's mother, on cross-examination, was asked the following question:

"Q. I will ask you now, if you made this statement to Mr. J. G. Glenn between two and three weeks after your daughter was injured, at home in La Belle, Missouri. In speaking of the injury to the arm of your daughter: 'It was two weeks after she was hurt before I found out the arm was broken, and I told them they had better see the doctor.'"

The question was objected to by plaintiff. The objection was sustained and exception saved.

The verdict was for plaintiff, assessing her damages at six hundred and seventy-nine and seven-twelfths dollars. After an unsuccessful motion for new trial, defendant appealed.

*Blair & Marchand, Dowell & Simpson* and *B. F. Thompson* for appellant.

(1) The court erred in failing to examine the pleadings and in failing to state the issues in the case to the jury by proper instructions. This should have been done and had it been done and the place of injury described in the first and second counts of plaintiff's amended petition been specifically and definitely stated in the instructions, the jury could never have returned the verdict it did. McGinniss v. Railroad, 21 Mo. App. 399; Procter v. Loomis, 35 Mo. App. 482; Fleischmann v. Miller, 38 Mo. App. 177-81; Clark v. Loan Co., 46 Mo. App. 248; Shaw v. Dairy Co., 56 Mo. App. 521. (2) In the said first count of plaintiff's petition it is averred that plaintiff fell in a certain hole, crevice or crack in said sidewalk and into the ditch or trench thereunder, and that thereby her right arm was broken, fractured and permanently injured. The second count of said petition avers that she fell into a certain hole, crevice and crack in said sidewalk and that her right arm was broken, etc. Not a word is said in either count about the injury being occasioned by her foot slipping into the ditch or trench under said sidewalk, hence, the issue presented by the pleading is entirely ignored by the instruction and a new fact or issue presented to the jury not stated in the pleading. This should not have been done. Russell v. Railroad, 26 Mo. App. 368; McDonald v. Railroad, 32 Mo. App. 70; Gurley v. Railroad, 93 Mo. 445.

*Clay & Johnson* and *Rieger & Rieger* for respondent.

(1) The petition is sufficient; either count is good pleading. Walker v. Point Pleasant, 49 Mo. App. 244; Rusher v. City of Aurora, 71 Mo. App. 418. (2) Every point raised by appellants in their brief, as to the suffi-

ciency of the petition, should have been raised by special demurrer or by motion to make more specific. Hurst v. City of Ash Grove, 96 Mo. 198. In regard to the second assignment of error by appellant, the question asked Chas. F. Smith, city clerk, is proper. Any order made by the defendant city requiring property owners to repair sidewalk on east side of Pomeroy street was competent evidence as showing city's knowledge of the condition of sidewalk. Rusher v. City of Aurora, 71 Mo. App. 418. (3) It is questionable whether plaintiff could be guilty of contributory negligence. Goins v. City of Moberly, 127 Mo. 116. (4) Defendant does not deny that plaintiff was injured on the sidewalk in question, but contends that the place she fell was only about eight feet from the south end of the two plank sidewalks. On defendant's own showing, defendant city is liable. This case should be affirmed with damages and we ask that the judgment of the trial court be affirmed with damages. Taylor v. Scott, 26 Mo. App. 249; Adder v. Long, 28 Mo. App. 440; Thomas v. Ins. Co., 47 Mo. 169.

BLAND, P. J.—1. The answer alleged defendant was informed that plaintiff, on or about the date mentioned, got her right arm hurt or broken, but denied that the hurt was caused by the negligence of defendant, but that it was caused by her own negligence. Defendant offered no evidence whatever, that plaintiff's arm was not broken; this fact was not controverted on the trial, and it was wholly immaterial that her mother said to Glenn, if she did say it, that "It was two weeks after she was hurt before I found out the arm was broken, and I told them they had better see the doctor." The question was asked her for the purpose of impeachment. It is well settled law that a witness can not be impeached on an immaterial issue, and we do not think that the court erred in sustaining the objection to the

question asked Mrs. Caskey in respect to her statement to Glenn.

2.   In respect to the evidence of Lucile Dowell, that she heard Grace Morton say in the presence and hearing of plaintiff at the schoolhouse, a few minutes after the accident, that plaintiff had weak ankles and her ankles gave way and she fell and plaintiff stood by and said nothing, that "she was crying," it seems to us should have gone to the jury for what it was worth.   However, Dulcie Mulinex testified to the same facts, without objection.   She was not contradicted in respect to this conversation by any witness, and the tacit admission of plaintiff, if it was an admission, that she had weak ankles and that they gave way and was the cause of her fall, was before the jury for what it was worth.   In view of this fact and of the age of plaintiff, her physical sufferings and mental anguish at the time the statement was made by the Morton girl and the fact that the Morton girl did not see her fall and did not know what caused her to fall, we think the evidence was of very little weight and was wholly insufficient to overcome the positive evidence of plaintiff, that she was caused to fall by stepping in the crack between the two boards in the walk, and that defendant was not materially prejudiced by the error in striking out this scrap in the evidence of the Dowell girl.

3. It is contended by defendant that the court erred in excluding the evidence of Neva and Alta McDaniels taken at a former trial of the case.   The defendant's abstracts do not show that any offer was made of this evidence.   The bill of exceptions, however, shows that the defendant proved by the court stenographer that the two witnesses in question testified at a former trial of the cause and that he had his stenographic notes of their evidence in his possession in court.   Evidence was also offered that at the former trial these two witnesses lived at La Belle, but afterwards moved with their par-

ents to Oklahoma City, in the Territory of Oklahoma and took up their permanent residence there; that in April or May previous to the trial, defendant's counsel served notice on plaintiff's counsel that they would take the depositions of these two witnesses in Oklahoma City, giving the date, street and number of the street, where the depositions would be taken, and that plaintiff's counsel had arranged to have her represented at the taking of such depositions, but that a few days before the time set for taking the depositions, defendant's counsel notified plaintiff's counsel that the depositions would not be taken. On this showing the court sustained an objection to the offer to have the stenographer read from his notes the evidence of the two absent witnesses taken on the former trial. This ruling is assigned as error.

Defendant did not state what the absent witnesses had testified to or what it would prove from the stenographic notes, so that this court is not informed whether or not the evidence was competent or material, or whether or not its exclusion was prejudicial. In such circumstances an appellate court will not review the action of the trial court in sustaining an objection to the introduction of evidence. Wilson v. Board of Education, 63 Mo. 137; Bank v. Wills, 79 Mo. 275; School District v. Lauderbaugh, 80 Mo. 190; The State v. Douglass, 81 Mo. l. c. 235; The State v. Reed, 117 Mo. l. c. 613; Hickman v. Green, 123 Mo. l. c. 179; Perkins v. Adams, 132 Mo. l. c. 134; Morton v. Heidorn, 135 Mo. l. c. 615; St. Louis v. Babcock, 156 Mo. l. c. 151; Ruschenberg v. Railroad, 161 Mo. l. c. 81; State v. Goddard, 162 Mo. l. c. 228; Distilling Co. v. Lock, 59 Mo. App. 637; Watkins v. Edgar, 77 Mo. App. 148; Sweet, Dempster & Co. v. Sullivan, 77 Mo. App. 129; Guntley v. Staed, 77 Mo. App. 162; Lawson v. Spencer, 90 Mo. App. 514.

The parties asked twenty-six instructions, of which the court gave but *twenty-five and one other of its own*

*motion.* Complaint is made of No. 1, given for plaintiff, for the reason that it referred the jury to the petition to locate the defective sidewalk in question. The instruction reads as follows:

"1.   The court instructs the jury that if you believe from the evidence that defendant city, on the east side of Pomeroy street along and at the place mentioned in plaintiff's petition, constructed and maintained or permitted to be constructed or maintained, a sidewalk made of two planks twelve inches wide and two inches thick laid lengthwise along the street five inches apart and laid on pieces of timber or chunks of wood three or four inches thick, and that such walk was so constructed that a space of five inches was left open and unguarded between said planks, and defendant city constructed or permitted to be constructed or dug a certain ditch or trench under said sidewalk, and you further find such sidewalk so constructed as aforesaid, the said ditch underneath was defective and dangerous; and if you further find that plaintiff, while passing along and over said sidewalk on or about November 25, 1899, the time mentioned in plaintiff's petition, while using due care and caution for one of her years, fell, by reason of her foot slipping into said ditch or trench aforesaid and by reason of said dangerous and defective sidewalk aforesaid and was injured thereby, then your verdict will be for the plaintiff on the first count of her petition."

The contention is that the court should have directed the jury to confine its attention to the very spot or foot of the sidewalk where it is alleged in the petition plaintiff's foot went through the crack, to determine whether or not the sidewalk contained the specific defects alleged in the petition and whether or not plaintiff's foot went through the crack at that identical spot. If the walk had been defective at one particular point or spot only, and the allegation of the petition had been that plaintiff stepped between the boards at that par-

ticular point, there would be some force in the defendant's contention and the case of Chitty v. Railroad, 148 Mo. 64, and kindred cases cited by the defendant, would apply; but the evidence of both plaintiff and defendant show beyond controversy that the board sidewalk was defective and dangerous from end to end; that its construction was such that any person passing over it, if he should happen to miss the boards and step into the crack between them, would probably be thrown, whether he did or did not step into one of the ditches under the walk. One who unexpectedly steps into a five-inch crack between two two-inch boards nailed to stringers, thereby losing his balance, would probably be thrown, even if his foot went but a few inches below the surface; and while the evidence of plaintiff is that she stepped into the crack and her foot went into the ditch under the sidewalk, yet we think that it was not essential to her right to recover that she should be held to strict proof that she did step into the ditch. If, as a matter of fact, she, not being negligent at the time, stepped into the crack anywhere on the sidewalk and was thrown, she was entitled to recover under the allegations of the petition.

This view of the evidence, in respect to the defective condition of the walk, disposes of defendant's contention that it was incumbent on plaintiff to prove every allegation of her petition in respect to the particular spot on the walk where the petition alleged she fell, and to prove that she stepped into the ditch under the walk, and we think that when plaintiff showed, as she did, that the sidewalk was defective from one end to the other by having a five-inch crack between the two parallel boards for its entire length and that the city officers had actual knowledge of its condition and that she unwittingly stepped into the crack and was thereby caused to fall and was injured, she made a prima facie case and should not be held to strict proof of the exact point

in the sidewalk where she fell, nor to strict proof of the exact number of inches her foot went into the crack.

4.   The instruction which the court refused was asked by defendant and reads as follows:

"8.   That if the jury believe from the evidence in the cause that the plaintiff was about eight years and four months old at the time of the accident, then and in that case, she was only required in law, to exercise care and prudence equal to her capacity, age, knowledge and experience; yet if the jury shall further believe from the greater weight of the evidence, in the cause that she was traveling south to the schoolhouse, crossed Pomeroy street and got onto the sidewalk on the east side of Pomeroy street and started south to the schoolhouse and commenced walking rapidly or skipping along slowly, sidewise on the walk and was looking back behind her, or to the side of herself, talking to some other girl or girls behind her, and whilst thus acting, she fell on her elbow and injured it—and shall further believe from the evidence in the cause that such fall and injury was the result of such conduct, then in that case they will find for defendant."

This instruction would make it negligent in a child of tender years and of immature discretion to play on the sidewalks of a city; and if it should happen that the sidewalk was defective, and the child, while innocently and thoughtlessly playing upon the walk, should step into a hole in the walk and break its leg, it would be guilty of contributory negligence and be debarred of any redress against the negligent city.   We can not give our assent to so monstrous a proposition as law.

We have disposed of all the points discussed in the defendant's brief.   The many other objections made by it we decline to notice for the reason the defendant has done no more in its brief and argument than merely to name them as objections.

Discovering no reversible error in the record, the judgment is affirmed.   *Reyburn* and *Goode, JJ.,* concur.